## Elia v. Zoning Hearing Board
## of Horsham Township

*Thomas E. Coval,* for appellant.
*Paul D. North,* for appellee.

LOWE, *J.,* February 17, 1976 — This matter comes before the court upon the appeal of Frank Elia (owner) from a decision of the Zoning Hearing Board of Horsham Township (board) denying his application for a variance to permit the construction of a single family residence on an undersized lot situate on the southeast corner of Pine Avenue and Adee Road, an uncut paper street, in Horsham Township, this county.

On April 8, 1974, the owner filed an application for a zoning permit with the zoning officer of Horsham Township requesting a building permit for the construction of a ranch-style single family residence on a lot at the corner of Pine Avenue and Adee Road. The application requested variances under Article IX, §§902.1, 902.2, 902.3, and 902.4 of the Horsham Township Zoning Ordinance.[1] The subject premises were purchased by the owner, an experienced builder, on August 27, 1974 from Raymond R. Flack et ux., who, on the same date, conveyed the adjacent lot and single family residence thereon to Gary P. McGinty et ux. Both the subject lot and the lot and residence conveyed to the McGintys had been conveyed to the Flacks as a single unit in 1960. In point of fact, both lots had been held in common ownership since 1954, and had experienced a unity of use as residential prop-

---

1. Horsham Township Zoning Ordinance, no. 1061, November 25, 1969, as amended, Article IX, §900 et seq.

erty since 1954. The subject lot is located in an R-4 residential district, which establishes minimum dimensional requirements as follows:

*R-4 Residential District*[2]

| | |
|---|---|
| Lot Area | 12,000 sq. feet |
| Lot width at building line | 80 feet |
| Front Yard Setback from each abutting street[3] | 50 feet |
| Side Yard | 10 feet each, aggregate 25 feet |
| Building Area | 20 percent of lot area |

The subject lot and the proposed structure do not satisfy the dimensional requirements of the zoning ordinance in the following respects: the lot area is 6,250 square feet; the lot width is 50 feet; the setback from Pine Avenue is 33 feet and from Adee Road, 13 feet 8 inches; the side yards are 10 feet on the side opposite Adee Road and 25 feet on the side opposite Pine Avenue; and the building area covers 26.7 percent of the lot's square footage.

The zoning officer refused to issue the requested permit and the owner appealed to the board. Pursuant to that appeal, a hearing before the board was duly advertised and scheduled to convene June 10, 1974. It was continued at the owner's request until July 8, 1974. On August 12, 1974, the board denied the owner's application and refused to grant the requested variances. On September 10, 1974, the owner appealed to this court. Following argument and upon consideration of the briefs

2. Horsham Township Zoning Ordinance, Article IX, §§902.1, 902.2, 902.3, and 902.4

3. Corner lots have no rear yards, but have two front yards and two side yards in all zoning districts.

of counsel, the owner's appeal was dismissed and the requested variances denied on December 18, 1975. An appeal from that decision was perfected by the owner to the Commonwealth Court of Pennsylvania on January 14, 1976.

Where, as here, the decision of the board contains findings of fact and the court takes no additional evidence, the scope of review of this court on appeal of the landowner from a decision of the board denying an application for a variance is limited to a determination whether the board abused its discretion or committed an error of law: Act of June 1, 1972, P.L. 333 (No. 93), sec. 1010, 53 P.S. §11010; Concord Township Appeal, 439 Pa. 466, 268 A.2d 765 (1970); Batco, Inc. v. Milford Township Zoning Hearing Board, 25 Bucks 346 (1974).

Initially, the owner contends that one-half of the width of Adee Road, or 20 feet, should be included in calculating the dimensions of the subject lot. The owner contends that Adee Road is a mere paper street created by dedication of the original developer at the time of the subdivision which created the Evergreen Terrace development and the subject lot in 1925. Since that dedication was not accepted by the Township by affirmative action within 21 years, the owner contends that the dedication of Adee Road was extinguished by operation of law: Act of May 9, 1889, P.L. 173 (No. 192), sec. 1, 36 P.S. §1961. This court is in accord with the owner's contention that the sale of lots according to a recorded subdivision plan in which lots and streets are laid out is an offer to dedicate those streets to the municipality wherein the subdivision is located. If the municipality does not accept the streets either expressly or by implication

within 21 years from the date of recording the subdivision plan, the municipality's unilateral right to accept the dedication expires by reason of the Act. However, this court is at a loss to understand how that principle applies to the controversy at bar.

It is well settled that though the running of the 21 year period extinguishes the right of the municipality or the public to accept a street dedication, the private right of easement existing in all persons who purchased lots within the subdivision by reference to the recorded plan is independent of the public right and not affected by the provisions of the above cited act. As observed in Vogel v. Haas, 456 Pa. 585, 588, 322 A. 2d 107 (1974), quoting favorably from Brodt v. Brown, 404 Pa. 391, 172 A. 2d 152 (1961):

"While the street was never accepted for public use by the borough, the private right, or easement to use the street, acquired by the plaintiffs and their predecessors in title, was not affected by the failure of the municipality to act upon the dedication . . . Where a lot of land is conveyed and the deed makes reference to a plan upon which the lot is laid out which, in turn, calls for a certain street thereon, this constitutes a dedication of the use of the street to the enjoyment of the purchaser as a public way though not yet opened and the map or plan becomes a material and essential part of the conveyance and has the same effect as if incorporated therein. The right of the purchaser, in such an instance, will be protected in equity."

It is clear, therefore, that unlike the owners in Moyerman v. Glanzberg, 391 Pa. 387, 138 A. 2d 681 (1958), wherein it was held the existence of a 25 foot driveway easement in favor of the owner of an undersized lot could be favorably considered by

the Board of Adjustment in granting a sideyard dimensional variance, the owner herein has no present right in the Adee Road so as to prevent its use as a street should the other property owners of Evergreen Terrace decide to open the street.

The owner also contends that the combined effect of the restrictions imposed by the zoning ordinance coupled with the refusal of the board to grant the requested variances precludes residential or other productive use of the property and thereby imposes an unnecessary hardship entitling him to a variance. It cannot be controverted that the dimensions of the subject lot prevent its utilization as a single family residential lot in conformity with the requirements of the R-4 district. Unless the requested variances are granted, the lot will have little or no productive value.

The owner contends that this case is controlled by the Commonwealth Court's decision in Jacquelin v. Horsham Township, 10 Pa. Commonwealth Ct. 473, 312 A. 2d 124 (1973), which held that the purchaser of a lot held in single and separate ownership before the enactment of a zoning regulation was entitled to a dimensional variance when the combined effect of the zoning ordinance and the board's refusal to grant a variance was to preclude any productive use of the property. In such a case, it is held that the zoning ordinance itself imposes an unnecessary hardship upon the landowner and is tantamount to a confiscation or taking of that property without just compensation. See also Schaaf v. Zoning Hearing Board of Borough of Edinboro Boro., 22 Pa. Commonwealth Ct. 50, 347 A. 2d 740 (1975).

The rationale of Jacquelin and Schaaf is limited to instances wherein the operation of the enacted

zoning ordinance upon existing lots imposes an unnecessary hardship. That principle does not control the situation "in which the hardship arises because an owner develops his property in such a fashion as to preclude full utilization of the property in compliance with the zoning ordinance." Borough of Baldwin v. Bench, 11 Pa. Commonwealth Ct. 410, 414, 315 A. 2d 911 (1974). See also Lally Zoning Case, 404 Pa. 174, 171 A. 2d 161 (1961); Volpe Appeal, 384 Pa. 374, 121 A. 2d 97 (1956); Campbell v. Ughes, 7 Pa. Commonwealth Ct. 98, 298 A. 2d 690 (1972); Madison v. Upper Moreland Township, 97 Montg. 42 (1973); Shaffer et al. v. Upper Gwynedd Township et al., 89 Montg. 23 (1967).

In Volpe, supra, the applicant bought two adjacent lots totalling 32,000 square feet. He then subdivided the lots. selling one 20,000 square foot lot (the minimum area required by the applicable ordinance) and retaining a 12,000 square foot lot. Subsequently, he requested a variance to build on the undersized lot. The court denied a variance because the hardship was self-imposed.

In Borough of Baldwin, supra, applicant's father had planned and laid out a tract comprising fifteen lots. All lots were located in an R-2 zone which required a minimum 55 foot frontage and 7,000 square foot area. Applicant's father had developed the tract in such a fashion that one lot had only a 40 foot frontage. This lot was acquired as a gift by applicant in 1969 and he requested a variance in 1971. The court held the fact that it was applicant's predecessor in title who developed the property in such a manner as to create the undersized lot did not alter the rationale of Volpe, and the board's denial of the variance was upheld. The

court expressly distinguished the case from its holding in Jacquelin, supra, on the basis of the self-imposed hardship principle. In so holding the court stated:

"[The applicant] was also a developer, and if not actually involved in his father's development plans, certainly must have been well aware of the situation involving the lot in question. The record is not clear, but [the applicant] states in his brief that he received the property from his father as a gift. Under these facts [the applicant] must assume the same legal status as possessed by his father. Since his father would have been banned from receiving a variance because his hardship was self-inflicted, [the applicant] must also be banned. To decide otherwise would be to completely emasculate the holding in Volpe, since a land developer, like the applicant in Volpe, need only deed the property to a member of his family in order to circumvent the holding of the Supreme Court." 11 Pa. Commonwealth Ct. at 413-414.

The fact that the owner herein was a purchaser, and not a donee, of the subject lot does not serve to distinguish the instant case from Borough of Baldwin and Volpe. The subject lot was part of a larger tract held in single ownership by the owner's predecessors in title. The two lots comprising this tract were held in common ownership since 1954. The zoning ordinance of Horsham Township was enacted in 1969. On August 27, 1973, the subject lot was conveyed to the owner and on the same date the adjacent lot, with attached residence, was conveyed to Gary McGinty et ux. The effect of this dual conveyance was to create by subdivision an undersized lot. The consideration paid by the owner was $100, a distress price re-

flecting the risk that a variance might not be obtained. Under the circumstances of this case, the owner possesses no equities insulating him from the disability created by his predecessors in title. To hold otherwise would be to emasculate the holding in Volpe. If a distress purchaser can take free and clear of a self-inflicted hardship imposed by his predecessor in title, the provision of the Municipalities Planning Code that a variance may be granted only if "such unnecessary hardship has not been created by the appellant" would be mere surplusage: Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, art. IX, sec. 912(3), 53 P.S. §10912(3).

The decision of the board in denying the owner's application for a variance to permit construction of a single family residence was entirely correct. The appeal of the owner was properly dismissed and his prayer for relief appropriately denied.