Pittsburgh Outdoor Advertising Company, Appellant, *v.* Zoning Board of Adjustment of the City of Pittsburgh, Appellee.

55

Argued May 9, 1974, before Judges KRAMER, MEN-CER and ROGERS, sitting as a panel of three.

*David W. Craig*, with him *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig*, for appellant.

*John R. Valaw*, Assistant City Solicitor, with him *Ralph Lynch, Jr.*, City Solicitor, for appellee.

OPINION BY JUDGE MENCER, June 26, 1974:

In June of 1971, Pittsburgh Outdoor Advertising Company (appellant) applied to the Zoning Administrator of the City of Pittsburgh for permits to erect advertising signs at seven different locations in the City of Pittsburgh. Appellant's applications were rejected and appellant appealed to the Pittsburgh Zoning Board of Adjustment (Board). After hearings were held, the Board affirmed the refusal of permits in all but one of the seven applications.

Appellant appealed the Board's decisions to the Court of Common Pleas of Allegheny County. The

Court resolved two cases in appellant's favor but affirmed the refusal of permits in four cases (Nos. S.A. 696, S.A. 697, S.A. 695, and S.A. 699 of 1972). Appellant then appealed these four cases to us. We have consolidated them for argument and decision since they all involve the same legal issue.

Although the locations involved in the four appeals are in different zoning districts, it is not disputed that appellant's proposed advertising signs are permitted by the Pittsburgh Zoning Ordinance in all of the districts involved. The narrow issue in this case is whether or not the Board has correctly interpreted Section 2401, subsection 8, of the Pittsburgh Zoning Ordinance. This subsection provides: "Uses Must be on a Zoning Lot or Accredited-zoning Lot. Except as hereinafter provided, after the effective date of this ordinance, all uses of property must be on a zoning lot or accredited-zoning lot as herein defined. *Not more than one (1) main structure or main use shall occupy any zoning lot or accredited-zoning lot,* except where a unit group building development has been approved. In the absence of a unit group building development, the division of any parcel of land into more than one (1) zoning lot for the purpose of more than one (1) main structure or main use, shall not be permitted except in accordance with the Act of May 13, 1927, P. L. 1011, as amended, which requires that a plan of subdivision be approved in cases of subdivision for improvement for residential, commercial, or industrial purposes." (Emphasis added.)

The Board's refusal to grant appellant's applications for permits was based on its determination that a sign is a main use or main structure under the above provision. If the Board's interpretation is correct, then its refusal to grant permits to appellant must be affirmed, since it is undisputed that another main use or struc-

ture already exists on each of the four locations[1] and no proper subdivision plan has been presented and approved in accordance with Section 2401, subsection 8.

Appellant argues that the Board's interpretation of subsection 8 is legally incorrect because such an interpretation is both unreasonable and against the plain intent of the Pittsburgh Zoning Ordinance. Our scope of review in zoning cases in which, as here, the court below did not take additional testimony is limited to a determination of whether the Board abused its discretion or committed an error of law. *Bamash v. Zoning Board of Adjustment,* 11 Pa. Commonwealth Ct. 420, 313 A. 2d 370 (1974). Our scrutiny of the Pittsburgh Zoning Ordinance convinces us that appellant's argument has merit and that the Board's interpretation of Section 2401, subsection 8, is incorrect as a matter of law. We therefore reverse.

Of course, the crux of this appeal is whether or not an advertising sign is a main structure or main use as these terms are used in Section 2401, subsection 8. Our review of the ordinance reveals that the above terms are not defined therein. However, the terms "accessory structure" and "accessory use" are defined in such a way as to clearly denote their opposition to the terms "main structure" and "main use." What is significant is that the terms "main" and "accessory," while used to categorize structures and uses, are never used to categorize signs. Indeed, Article 25 of the Ordinance, which contains all the regulations and specific district provisions concerning signs—thus treating signs differently from all other structures and uses—makes no mention of the terms "main" or "accessory" with respect to signs.

---

[1] Buildings are on two of the sites and railroad tracks are on the others.

As pointed out by appellant, another clear illustration of the fact that the Ordinance treats signs as a separate class from structures and uses is the heading of Article 27 on nonconformities which reads: "27. NONCONFORMING SIGNS, USES AND STRUCTURES." Within this article, Section 2702 deals separately with nonconforming signs, while Sections 2703 and 2704 deal with nonconforming uses and structures. We find that the only conclusion which can logically be reached from the separate treatment of signs in Article 25 and the distinction made between signs, uses and structures in Article 27 is that the Pittsburgh Zoning Ordinance contemplates signs as a separate class and not as one of many different structures or uses as contended by the Board.

The Board's determination that signs are main structures or uses requiring separate zoning lots is also contradicted by various provisions of the Ordinance which expressly assume that advertising signs will be on the same lot as other uses and structures. Section 2504, subsection 2, provides that advertising signs attached to walls of buildings must not exceed certain area requirements. Section 2504, subsection 1, dictates the size of signs on the roofs of buildings. Moreover, the very definition of "advertising sign" makes it clear that the Ordinance contemplates the use of signs on lots with existing uses and structures. That definition in Section 202 reads:

"Sign, Advertising: A sign which directs attention to a business, commodity, service or entertainment, conducted, sold or offered

"a. only elsewhere than upon the premises where the sign is displayed, or

"b. *as a minor and incidental activity upon the premises where the sign is displayed.*" (Emphasis added.)

As has been stated many times, zoning ordinances, being in derogation of a property owner's constitutional rights, must be strictly construed. *Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 211 A. 2d 514 (1965). Our analysis of Section 2401, subsection 8, taking into account the Pittsburgh Zoning Ordinance as a whole, convinces us that the terms "main structure" and "main use" as used in that provision do not include advertising signs. We therefore find, as a matter of law, that the Board was mistaken in interpreting this subsection as a bar to the applications for permits to erect advertising signs in the four cases now before us.

The orders of the Court of Common Pleas of Allegheny County are hereby reversed, with direction to remand the cases herein (Nos. S.A. 696, S.A. 697, S.A. 695, and S.A. 699 of 1972) to the Pittsburgh Zoning Board of Adjustment for action not inconsistent with this opinion.